IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

DARRELL LEE JACKSON,               :

      Petitioner,                :

v.                                 :
                        CIVIL ACTION 06-0172-BH-C

KENNETH JONES,                     :

      Respondent.                :

## REPORT AND RECOMMENDATION

Darrell Lee Jackson, a state prisoner currently in the custody of Respondent, has petitioned this Court for federal habeas corpus relief pursuant to 28 U.S.C. § 2254. Petitioner challenges the validity of his conviction in November 2003 by a jury in the Circuit Court of Mobile County, Alabama, for the offenses of reckless murder, and assault in the first and second degree for which Petitioner received sentences of life imprisonment without the possibility of parole, with thirty years for each assault conviction to run concurrent.  (Doc. 20, Ex. A, Vol. 1 at 4, 9, and 10).  This matter is now before the Court on Petitioner's petition, Respondent's answer, Petitioner's response to Respondent's answer, the trial court record, opinions and orders of the state trial and appellate courts, opinions and orders of this Court, and various briefs of the parties in the state court proceedings.[1]

_____

[1]Following a careful review of the record and exhibits before the Court, the undersigned has concluded that there are sufficient facts and information upon which the issues under consideration may be properly resolved.  Therefore, no evidentiary hearing is

# I. FINDINGS OF FACT

1.     On July 29, 2002, Cynthia Raymond, a public information officer for the
Mobile Museum of Art, along with two co-workers, Meredith Madnick and Lynn
Edwards, were traveling along Springhill Avenue in Mobile, Alabama, when Ms.
Raymond's vehicle was hit head-on by Petitioner.  (Doc. 20, Ex. A, Vol. 1 at 103-104,
126, 128-131; Vol. 2 at 132).  Petitioner's white vehicle crossed three or four lanes of
traffic to strike Ms. Raymond's vehicle.  (Id. at 103-104).  Ms. Raymond suffered knee
and foot injuries, and Ms. Madnick also suffered multiple injuries, including a fractured
rib, ulna, and patella, and a ruptured tendon in one knee.  Ms. Edwards, who was riding in
the rear of the automobile, suffered multiple blunt force trauma injuries and died a few
hours later as a result of those injuries.  (Doc. 20, Ex. A, Vol. 3 at 350, 363).

2.     Evidence at trial indicated that Petitioner was combative following the
accident, and that he and the interior of his vehicle smelled strongly of alcohol.  (Doc. 20,
Ex. A, Vol. 2 at 181-183, 186-187, 189-190, 195-197, 263, 268-269, 281-282).
Witnesses, including the investigating officer, a paramedic at the scene of the accident, an
emergency room nurse, and the treating physician at the hospital testified that Petitioner
smelled of alcohol.  (Id.).  Specifically, Dr. Seth Rayburn, Petitioner's treating physician,
testified that Petitioner was very agitated when he arrived at the hospital following the
accident.  (Doc. 20, Ex. A, Vol. 2 at 264).  Dr. Rayburn wrote the following in his

required upon the issues.  Keeney v. Tamayo-Reyes, 504 U.S. 1, 11 (1992).

medical chart: "[p]atient very combative. Smells strongly of ETOH."  (Id. at 269).

Further, a urine test showed that Petitioner tested positive for barbiturates[2] and cocaine.

(Doc. 20, Ex. A, Vol. 2 at 307).

3.      Petitioner was indicted by a Mobile County, Alabama, Grand Jury on

August 8, 2003, for the crimes of murder, assault in the first degree, and assault in the

second degree.  (Doc. 20, Ex. A, Vol. 1 at 13 and 15, Indictments).  On November 5,

2003, following two days of trial, Petitioner was convicted of murder and assault in the

first and second degree, with Richard Shields, Esquire, representing him.  (Doc. 20, Ex.

A, Vol. 1 at 3, 9, 10, 14, 16, and 35; Vol. 3 at 523).

4.      Petitioner was sentenced on December 12, 2003, to life imprisonment

without the possibility of parole for his murder conviction, and sentenced to 30 years each

for his first degree and second degree assault convictions.  (Doc. 20, Ex. A, Vol. 1 at 4,

10).  On or about December 12, 2003, Petitioner's retained appellate counsel, attorney

James M. Byrd, gave an oral notice of appeal with the Alabama Court of Criminal

Appeals.  (Id. at 68).

5.      On January 9, 2004, Petitioner's counsel made a motion for a new trial with

the Mobile County Circuit Court.  (Id. at 58-59).  In the motion for new trial, Petitioner's

appellate attorney argued that Petitioner's trial counsel was ineffective for failing to

_____

[2]The trial court removed from the jury's consideration whether Petitioner was under the influence of barbiturates after testimony that he had been administered barbiturates at the hospital prior to the urine test.  (Doc. 20, Ex. A, Vol. 2 at 265-266, 271-273).

3

present evidence of Petitioner's medical condition involving alleged seizures which might have raised reasonable doubt as to the criminal cause of Petitioner's inability to operate his automobile on the day of the accident.  (Doc. 20, Ex. A, Vol. 4 at 544).  Petitioner's appellate attorney also argued that Petitioner's trial counsel was ineffective for failing to object to the admission of Petitioner's blood test which indicated that cocaine was present in Petitioner's system, and that Petitioner's trial counsel was ineffective for failing to subpoena and call a witness who was with Petitioner prior to his driving on the day of the accident who would testify that Petitioner was not under the influence of alcohol at the time he was driving.  (Id. at 545).

6.      A hearing was held concerning the motion for new trial, and during the hearing, Petitioner testified that he provided his trial counsel with names of people who could testify on his behalf concerning his medical condition and the seizures which he allegedly suffered from.  (Id. at 547-548).  Petitioner also testified that he told his trial counsel the name and contact information of an individual whom he was with prior to the accident.  (Id.).  Petitioner's sister, Ovella Brown, testified that Petitioner had seizures when he was two to four years old, but she was not with Petitioner on the day of the accident and thus could not state whether he had a seizure that day.  (Doc. 20, Ex. A, Vol. 4 at 551-552).  Another sister of Petitioner's, Gwendolyn Jackson, testified at the hearing that Petitioner had seizures throughout his life, and that she had informed Petitioner's attorney about the condition.  (Id. at 554-556).  Although Ms. Jackson was not with Petitioner on the day of the accident, she testified that based upon the testimony

4

describing his demeanor on that day, he acted in a similar manner during his seizures. (Id. at 556). However, she had never known him to smell of alcohol due to a seizure. (Id.). Several other family members testified that Petitioner had seizures. (Id. at 558-566).

 7. Additionally, Altheria Watson, a friend of Petitioner's, testified that she saw him on the morning of the accident when he stopped by her house. (Id. at 566). He did not appear intoxicated at that time, but she admittedly did not know what he did after he left her house. (Id.). This motion for a new trial was denied by the trial court on March 31, 2004. (Doc. 20, Ex. A, Vol. 1 at 12).

 8. Subsequently, Petitioner appealed only the reckless murder of Lynn Edwards and the first degree assault of Cynthia Raymond, according to the case numbers on the notice of appeal. (Doc. 20, Ex. A, Vol. 1 at 57). Petitioner argued on appeal that the trial court erred by not defining for the jury the definition of "driving under the influence," and that trial counsel was ineffective for failing "to present evidence Darrell Jackson did not consciously drive on the wrong side of the road..." (Doc. 19, Ex. B at 12). The State filed a brief as the appellee, (Id., Ex. C), and Petitioner's appellant counsel filed a reply brief. (Id., Ex. D). Petitioner's conviction and sentence were affirmed on appeal by the Alabama Court of Criminal Appeals on August 20, 2004. (Doc. 19, Ex. E, Memorandum Opinion). In its opinion, the appellate court stated as follows:

> The appellant, Darryl Lee Jackson, was convicted of one
> count of reckless murder, a violation of § 13A-6-2(a)(2), Ala.
> Code 1975; one count of first-degree assault, a violation of §

5

13A-6-20(a)(5), Ala. Code 1975 and one count of second-degree assault in violation of § 13A-6-21, Ala. Code 1975.(FN1). He was sentenced as a habitual offender to life imprisonment without the possibility of parole for the murder conviction, and two terms of 30 years' imprisonment for the first-degree and second-degree assault convictions. The sentences were ordered to run concurrently. He was also ordered to pay a $50 assessment to the crime victims compensation fund and court costs. This appeal followed.

> FN1. Jackson was indicted in three separate indictments charging him with driving under the influence of alcohol and/or barbiturates and/or cocaine or any combination thereof, a violation of § 32-5A-191, Ala. Code 1975, causing serious bodily injury or the death of his victims while driving on the wrong side of the road, a violation of § 13A-6-20, Ala. Code 1975. The cases were consolidated and tried together. On appeal, he challenges only the convictions for reckless murder and first-degree assault.

The evidence presented at trial tended to show that on July 29, 2002, Cynthia Raymond, a public information officer for the Mobile Museum of Art, arranged to meet Marcy Mincy of the Mobile Convention and Visitors Bureau to discuss a brochure for the museum. Raymond and two co-workers, Meredith Madnick and Lynn Edwards, were to meet Mincy around noon at the Atlanta Bread Company.

As they proceeded toward the restaurant, Raymond noticed a white car cross three or four lanes of traffic and strike her vehicle head-on. Raymond suffered injuries to her right foot and knee. Madnick suffered multiple injuries, including a fractured rib, ulna, and patella, and a ruptured tendon in one knee. Edwards, who was in the rear seat, suffered multiple blunt force trauma injuries and died several hours later as a result of those injuries.

Several witnesses testified that Jackson smelled of alcohol on the day of the accident, including the investigating officer, a

paramedic at the scene, and the treating physician at the hospital.  A urine test was admitted that showed that Jackson tested positive for barbiturates (FN2) and cocaine.

> FN2.  The trial court removed from the jury's consideration whether Jackson was under the influence of barbiturates after testimony of Dr. Seth Rayburn indicated that Jackson had been administered a barbiturate before his urine was taken to be tested.

The record reflects that, at trial, Jackson submitted two requested jury instructions.  The first requested instruction stated: "The mere presence of a scar resulting from surgery will not elevate 'physical injury' to 'serious physical injury.'"  The second requested jury instruction stated: "One's blood alcohol content is a material element of the prosecution's case for reckless murder based on a fatal motor vehicle wreck involving a drunk driver."  The trial court denied both jury instructions.  Jackson then made exceptions to the trial court's failure to give his requested jury instructions and to the trial court's granting of the State's requested jury charges number one and six.(FN3).

> FN3.  The State's jury charge number one stated: "Evidence of the defendant's prior history regarding alcohol may be considered by you the jury in order to prove that the defendant had been drinking...prior to the accident, the defendant's intent, or the defendant's reckless indifference of the probable consequences of his acts."  The State's jury charge number six stated: "Driving a motor vehicle while under the influence of alcohol to a degree which renders one incapable of safely driving is not a statutory element of reckless murder as charged in the indictment."  (C.R. 30).

Jackson contends that the trial court should have instructed the jury on the definition of "under the influence" in its jury instructions.  However, Jackson never requested that the trial

court offer such an instruction; it is therefore not properly before this Court for review.

Rule 21.3, Ala. R. Crim. P., provides, in pertinent part: "[n]o party may assign as error the court's giving or failing to give a written instruction, or the giving of an erroneous, misleading, incomplete, or otherwise improper oral charge, unless the party objects thereto before the jury retires to consider its verdict, stating the matter to which he or she objects and the grounds of the objection."  See also Jolly v. State, 858 So. 2d 305, 309 (Ala. Crim. App. 2002) ("The specific statement of grounds of objection to a jury instruction waives all other grounds.")

Next, Jackson claims that he received ineffective assistance from trial counsel.  Specifically he argues that his counsel was ineffective for failing to call certain witnesses who could testify that Jackson had seizures in the months prior to the instant offenses.  His position is that such testimony indicating that he is prone to seizures would have created reasonable doubt as to whether he intentionally drove his vehicle on the wrong side of the road and as a result, killed Edwards and assaulted Raymond and Madnick.

We note at the outset that Jackson was not convicted of intentional murder, but of reckless murder, pursuant to § 13A-6-2(a)(2), Ala. Code, 1975.  All that the jury needed to believe is that Jackson, under circumstances manifesting extreme indifference to human life, recklessly engaged in conduct which created a grave risk of death to a person other than himself, and causes the death of the other person. Whether to present testimony relating to the fact that Jackson suffered from seizures would not have negated the obvious suggestion that it could be equally reckless to drive an automobile when one suffers from such seizures.

In order to prevail on an ineffective assistance of counsel claim, a defendant must meet the two-pronged test set out by Strickland v. Washington, 466 U.S. 668 (1984).

"'First, the defendant must show that counsel's

8

performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable.  Unless a defendant makes both showings, it cannot be said that the conviction or ... sentence resulted from a breakdown in the adversary process that renders the result unreliable.'

"Id. at 687, 104 S. Ct. at 2064.

"'The performance component outlined in Strickland is an objective one: that is, whether counsel's assistance, judged under "prevailing professional norms," was "reasonable considering all the circumstances."' Daniels v. State, 650 So. 2d 544, 552 (Ala. Cr. App. 1994) (quoting Strickland, 466 U.S. at 688, 104 S. Ct. at 2065).  Once a defendant has identified the specific acts or omissions that allegedly were not the result of reasonable professional judgment on counsel's part, the court must determine whether those acts or omissions fall outside the wide range of professionally competent assistance.  Id.

"When reviewing a claim of ineffective assistance of counsel, we indulge a strong presumption that counsel's conduct was appropriate and reasonable.  Hallford v. State, 629 So. 2d 6 (Ala. Crim. App. 1992), cert. denied, 511 U.S. 1100, 114 S. Ct. 1870, 128 L. Ed. 2d 491 (1994); Luke v. State, 484 So. 2d 531 (Ala. Crim. App. 1985).

9

"'Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.'

"Strickland, 466 U.S. at 689, 104 S. Ct. at 2065 (citations omitted). See Ex parte Lawley, 512 So. 2d 1370, 1372 (Ala. 1987).

"And, even if an attorney's performance is determined to be deficient, the petitioner is not entitled to relief unless it is also established that 'there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.

"In an ineffective assistance of counsel claim, the burden is

10

> on the claimant to show that his counsel's assistance was
> ineffective.  Ex parte Baldwin, 456 So. 2d 129(Ala. 1984),
> aff'd, 472 U.S. 372, 105 S. Ct. 2727, 86 L. Ed. 2d 300
> (1985)."
>
> McNair v. State, 706 So. 2d 828, 839 (Ala. Crim. App. 1997).
>
> Jackson has not met his burden of showing that the outcome
> would have been different had his counsel called the
> additional witnesses.  Defense counsel's decision not to put
> on evidence regarding Jackson's seizures was a strategic
> decision that should not be second-guessed.  Therefore, his
> claim must fail.
>
> For all of the foregoing reasons, this cause is due to be
> affirmed.

(Doc. 19, Ex. E).  Thereafter, on September 10, 2004, the Alabama Court of Criminal

Appeals denied his application for rehearing.  (Doc. 19, Ex. G, Notice).  On November

12, 2004, the Alabama Supreme Court issued a certificate of judgment, denying

Petitioner's petition for writ of certiorari. (Doc. 19, Ex. I, Certificate of Judgment).

> 9.    On February 28, 2005, Petitioner filed *pro se* a Rule 32 petition in the

Mobile County Circuit Court containing the following grounds for relief:

> (1) Ineffective assistance of trial counsel based upon the
> following:
>
> > (a) failing to file any pretrial motions;
> >
> > (b) failing to perform any pretrial investigation;
> >
> > (c) failing to interview the State's witnesses prior to trial;
> >
> > (d) having a lack of knowledge of the applicable law on the correct
> > procedure for admitting DUI convictions as prior convictions;

(e) not showing that Jackson was represented by counsel on the prior DUI convictions;

(f) failing to put on an alibi defense showing that Jackson was not conscious when the fatal accident occurred.

(2) Ineffective assistance of appellate counsel based upon the following:

(a) for not applying the case of <u>Strickland v. Washington</u> to his argument on direct appeal that trial counsel was ineffective for failing to put forth an alibi defense with witnesses and for failing to meet the two prong test of <u>Strickland</u>;

(b) for raising an issue that was not preserved for appellate review in Jackson's brief on direct appeal;

(c) for not contacting and conferring with Jackson before "perfecting" the brief;

(d) for failing to notice that the State had improperly entered evidence of Jackson's prior DUI convictions.

(3) Jackson's convictions should be reversed because the prior DUI convictions that were used to show malice and depraved state of mind were wrongfully introduced.

(4) The introduction of two prior DUI convictions constituted an improper introduction of collateral crimes whose prejudicial effect far outweighed its probative values

(5) The State failed to meet its burden of proof and failed to meet the averments in Jackson's indictments that he was conscious of his actions, thereby creating a fatal material variance.

(6) The indictment had a fatal variance from the proof adduced at trial because there was no proof of Jackson's degree of intoxication proven at trial.

(7) The trial judge improperly ruled on the case when he stated that people who have seizures should not drive.

12

(Doc. 20, Ex. J, Rule 32 Petition, at 28-53).[3]

     10.    On May 26, 2005, the trial court denied Petitioner's Rule 32 petition.  (Doc. 20, Ex. J, Order, at 114-117).  Subsequently, on November 18, 2005, the Alabama Court of Criminal Appeals issued a memorandum opinion affirming the trial court's denial of Petitioner's Rule 32 petition.  (Doc. 19, Ex. N, Memorandum Opinion).  In affirming the trial court, the appellate court stated as follows:

> The appellant appeals from the trial court's summary dismissal of his Rule 32 petition for post-conviction relief.
>
> The appellant's underlying convictions were for reckless murder, assault in the first degree, and assault in the second degree.  He was sentenced as a habitual offender to life without parole on the reckless murder conviction, thirty years' imprisonment on the first-degree assault conviction, and thirty years' imprisonment on the second-degree assault conviction, with the sentence to run concurrently.  His conviction was affirmed on direct appeal.
>
> In his petition, the appellant raises numerous claims of ineffective assistance of trial and appellate counsel.  He also argues that the trial court was without jurisdiction to render judgment or impose sentence, because the State failed to meet its burden of proof and, as a result, "created a fatal material variance."  More particularly, he argues that the State failed to prove that he was under the influence of "something," by not proving the presence of either drugs or alcohol.  (The State proved that the appellant was under the influence of both drugs and alcohol and was driving erratically, crossing over several lanes of traffic to collide with the victims' car.)
>
> In its order summarily dismissing the petition, the trial court

---

[3]Petitioner filed his Brief and Argument in support of his Rule 32 Petition on March 7, 2005.  (Doc. 20, Ex. J at 54-107).

found that the appellant's ineffective assistance of trial counsel claims were precluded from review because they were addressed at trial, or on direct appeal. Rule 32.2 (a)(2), (4), Ala. R. Crim. P.

Additionally, the trial court found that the appellant's ineffective assistance of appellate counsel claims were precluded because the grounds forming the basis of the claims were raised, or could have been raised at trial or were raised, or could have been raised on appeal. Rule 32.2(a)(2), (3), (4), and (5), Ala. R. Crim. P. The trial court specifically found that

> "[t]he issues that appellate counsel raised on appeal were the only ones that properly were preserved for appellate review, and were then decided by the Criminal Appeals Court adversely to the Petitioner. Petitioner provides no factual or legal basis to show that but for appellate counsel's performance, Petitioner necessarily would have prevailed on appeal... ."

Lastly, the trial court found that the appellant's arguments addressing a fatal variance between the indictment and proof at trial, although couched in jurisdictional language, addressed the sufficiency of the evidence and were therefore, precluded from appellate review because they could have been, but were not addressed at trial and on appeal. Rule 32.2(a)(3) and (5), Ala. R. Crim. P. See also Jackson v. State, 889 So. 2d 49, 52 (Ala. Crim. App. 2004).

The judgment of the trial court is affirmed.

11.     Petitioner then appealed this decision, and said application for rehearing was overruled by the Alabama Court of Criminal Appeals on January 6, 2006. (Doc. 19, Ex. P, Notice). Subsequently, Petitioner filed a petition for writ of certiorari with the Alabama Supreme Court on January 19, 2006, in which he raised the issue that the

decision by the appellate court denying his ineffective assistance of trial and appellate counsel claims, and the decision of the appellate court regarding his claim of a fatal variance between his indictment and the evidence presented at trial is in direct conflict with a prior Supreme Court decision.  (Doc. 19, Ex. Q, Petition for Writ of Certiorari).

12.    The petition for writ of certiorari was denied without opinion on February 10, 2006.  (Doc. 19, Ex. R).

13 .    On May 1, 2006, Petitioner filed the instant federal habeas corpus petition attacking his conviction and sentence, asserting the following four claims as bases for federal habeas relief:

(1) ineffective assistance of trial counsel because of the following:

    (a)    trial counsel did not request discovery;
    (b)    trial counsel did not perform any investigation;
    (c)    trial counsel allowed the State to introduce evidence of Petitioner's prior DUI convictions in an improper manner;
    (d)    trial counsel failed to make the State show that Petitioner was represented by counsel during his DUI convictions; and
    (e)    trial counsel failed to put forth Petitioner' alibi defense, which was his only defense;

(2) ineffective assistance of appellate counsel based upon the following:

    (a)    appellate counsel failed to use the two prong test of <u>Strickland v. Washington</u> when raising the issue of the ineffectiveness of Petitioner's trial counsel on direct appeal;
    (b)    appellate counsel also raised issues that were not preserved for appellate review;
    (c)    appellate counsel never conferred or contacted Petitioner before preparing his direct appeal brief;
    (d)    appellate counsel rushed through his direct appeal, thereby failing to notice that the State improperly introduced Petitioner's prior DUI convictions;

(3) improper introduction of evidence because the prior DUI convictions were introduced to show malice and a depraved state of mind, and also they were introduced through traffic tickets while the law requires them to be introduced on certified copies of the case action summary showing the date of convictions and that Petitioner was represented by counsel.

(4) a fatal material variance of the indictment because the indictments set out that Petitioner was driving under the influence of either drugs or alcohol, but the State failed to prove at trial that Petitioner was under the influence of any drugs or alcohol.

(Doc. 7, Amended Petition at 7-8).

14.    Respondent contends that all of Petitioner's claims of ineffective assistance of trial counsel claims are procedurally defaulted.  (Doc. 17,  Respondent's Answer). Respondent further contends that Petitioner's claims of ineffective assistance of appellate counsel lack merit.  Regarding Petitioner's claim that the trial court improperly admitted evidence concerning his prior DUI convictions because they were not in their proper form and there was not evidence that he was represented by counsel, the Respondent contends that this third habeas claim was not presented throughout the trial and state appellate courts on direct appeal, and is therefore, procedurally defaulted.  Last, as to  Petitioner's claim that there was a fatal material variance in the indictment because the State did not prove that Petitioner was intoxicated "To Properly Prove the Depraved Mind or Malice Aspect of the Indictment," Respondent contends that this issue is also procedurally defaulted.  Even if Petitioner's claims are not procedurally defaulted, Respondent argues that they are each without merit.  (Doc. 17).

## II. CONCLUSIONS OF LAW

1.      As outlined above, Petitioner has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, raising four federal constitutional claims.  For the reasons set forth below, the Court finds that Petitioner is not entitled to habeas relief on the basis of any of these claims.

Exhaustion/Procedural Default

2.      Section 2254(b)(1) provides that a prisoner in state custody shall not be granted a writ of habeas corpus unless the prisoner "has exhausted the remedies available in the courts of the State."  "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."  O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999).  A state prisoner's failure to present his claims to the state courts in the proper manner results in a procedural default of those claims.  Id. at 848.

3.      In addressing the proper manner in which a federal claim must be presented to the state court to prevent procedural default, the United States Supreme Court has stated:

> In Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 512, 30 L. Ed. 2d 438 (1971), we said that exhaustion of state remedies requires that petitioners "fairly presen[t]" federal claims to the state courts in order to give the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights" (some internal quotation marks omitted).  If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution.  If a habeas petitioner wishes to claim that an evidentiary ruling at

> a state court trial denied him the due process of law
> guaranteed by the Fourteenth Amendment, he must say so, not
> only in federal court, but in state court.

Duncan v. Henry, 513 U.S. 364, 365-66 (1995).

4.      The exhaustion doctrine also requires that a petitioner "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan, 526 U.S. at 845.  In Alabama, the established appellate review process includes an appeal to the Alabama Court of Criminal Appeals, an application for rehearing to the Alabama Court of Criminal Appeals, and an application for discretionary review by the Alabama Supreme Court.  See Ala. R. App. P. 4, 39, 40.  The threshold question here, then, is whether Petitioner fully and fairly presented his federal habeas claims to the Alabama courts by invoking one complete round of the State's established appellate review process.

5.      Respondent has asserted that Petitioner has failed to exhaust his remedies in state court with respect to some of his habeas claims.   Specifically, Respondent contends that all of Petitioner's ineffective assistance of trial counsel claims are procedurally defaulted, as well as Petitioner's claims that the trial court improperly admitted evidence concerning his prior DUI convictions, and that there was a fatal material variance in the indictment because the State failed to prove that Petitioner was intoxicated to "properly prove the depraved mind or malice aspect of the indictment."

6.      The record reflects that Petitioner failed to raise each of his ineffective assistance of trial counsel claims on direct appeal, except for the claim that his trial

18

counsel failed to put forth an alibi defense for Petitioner.[4]   (Doc. 19, Ex. B, Direct

Appeal Brief).  As to Petitioner's claim that his trial counsel failed to put forth an alibi

defense, while this claim was raised on direct appeal, it was not raised in Petitioner's

application for rehearing (Doc. 19, Ex. F), or certiorari petition (Doc. 19, Ex. H).

Petitioner did raise his claims of ineffective assistance of appellate counsel in his Rule 32

petition, presumably the first time that he could have done so.  (Doc. 20, Ex. J at 75-82).

Regarding Petitioner's claim that his prior DUI convictions were introduced improperly,

this claim does not appear to have been presented on direct appeal, and was not raised in

Petitioner's certiorari petition to the Supreme Court of Alabama on direct appeal.

Last, as to Petitioner's claim that there was a fatal material variance in the indictment

because the State failed to prove that Petitioner was driving under the influence of drugs

or alcohol, Petitioner asserted this claim in his Rule 32 petition but failed to assert it in his

direct appeal.  (Doc. 19, Ex. B).

      7.      Where Petitioner has failed to exhaust state remedies that are no

longer available, that failure is a procedural default which will bar federal habeas relief

unless either the cause and prejudice or the fundamental miscarriage of justice exception

is established.  Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001) (citing O'Sullivan v.

---

      [4]In affirming the denial of Petitioner's Rule 32 petition regarding his ineffective
assistance of trial counsel claims, the Alabama Court of Criminal Appeals did not address
the merits of these claims as they were precluded from review because they were
addressed at trial, or on direct appeal, citing Rule 32.2(a)(2), (4), Ala. R. Crim. P.  (Doc.
19, Ex. N at 2).

Boerckel, 526 U.S. 838, 848-49 (1999) and Coleman v. Thompson, 501 U.S. 722, 750 (1991)).  See also Gates v. Zant, 863 F.2d 1492, 1500 (11th Cir. 1989) ("[a] defendant who is procedurally barred from raising a federal constitutional claim in state court is also barred from raising the claim in a federal habeas petition unless he can show cause for and actual prejudice from making the default."); Medina v. Singletary, 59 F.3d 1095, 1107 (11th Cir. 1995) ("[i]f a state prisoner fails to raise a claim in state court, or attempts to raise a claim in an improper manner, and state procedural rules preclude the state courts from hearing the merits of the claim, then the federal habeas court is also precluded from hearing its merits, absent a showing of cause and prejudice.").

8.     To overcome his procedural defaults, Petitioner would have to either demonstrate cause and prejudice to excuse the default or prove a fundamental miscarriage of justice requires review of his habeas claims.[5]  Murray v. Carrier, 477 U.S. 478, 485 (1986) (citing Wainwright v. Sykes, 433 U.S. 72, 87 (1977)); Smith v. Murray, 477 U.S. 527, 537-38 (1986).  "Cause" for a procedural default exists if "the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule," or that the procedural default was the result of ineffective assistance of counsel.  Id., 477 U.S. at 488.  To establish "prejudice," Petitioner additionally must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his

---

[5]The Court notes that Petitioner's claims of ineffective assistance of appellate counsel claims do appear to have been properly exhausted in state court.

entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170 (1982) (emphasis in original).  In the absence of a showing of cause and prejudice, this Court may yet consider a procedurally defaulted claim if a "fundamental miscarriage of justice" has "probably resulted in the conviction of one who is actually innocent." Murray, 477 U.S. at 537-38.

9.    Having duly considered Petitioner's petition and additional pleadings, as well as all of the information contained in the court record, the Court finds that Petitioner has failed to demonstrate, or even allege, that "some objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule," or that the cause for the procedural default was the result of ineffective assistance of counsel. Murray, 477 U.S. at 488.  Moreover, Petitioner has failed to show that he is "actually innocent," thereby establishing that a fundamental miscarriage of justice would occur if this Court did not consider these claims.  Id. at 496.  The Court is of the opinion that Petitioner has failed to establish cause and prejudice as those terms are defined by law and has failed to establish that a denial of review of his defaulted claims constitutes a fundamental miscarriage of justice.

10.    In any event,  28 U.S.C. Section 2254(b)(2) provides that "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  See also Smith v. Crosby, 159 Fed. Appx. 76, *3 n.1 (11th Cir. Dec. 2, 2005).  Therefore, as the undersigned has determined that all of Petitioner's claims have not been exhausted and

furthermore that none have merit, pursuant to 28 U.S.C. Section 2254(b)(2), this Court

should deny each of Petitioner's claims on the merits.

     11.    28 U.S.C. Section 2254(d) provides that:

> (d) An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court
> shall not be granted with respect to any claim that was
> adjudicated on the merits in State court proceedings unless the
> adjudication of the claim-
>
>> (1) resulted in a decision that was contrary to, or
>> involved an unreasonable application of, clearly
>> established Federal law, as determined by the
>> Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an
>> unreasonable determination of the facts in light
>> of the evidence presented in the State court
>> proceeding.

Id. Petitioner filed his habeas petition after the enactment of the AEDPA; therefore,

subsection (d) applies to his petition.

     12.    In Williams v. Taylor, 529 U.S. 362, 412 (2000), Justice O'Connor, writing

for a majority of the Court, recognized that "§ 2254(d)(1) places a new constraint on the

power of a federal habeas court to grant a state prisoner's application for a writ of habeas

corpus with respect to claims adjudicated on the merits," as a writ may issue only if the

state court adjudication resulted in a decision that (1) "was contrary to ... clearly

established Federal law, as determined by the Supreme Court of the United States," or (2)

"involved an unreasonable application of ...clearly established Federal law, as determined

by the Supreme Court of the United States."

A state-court decision is contrary to the Supreme Court's clearly established precedent (1) if the state court applies a rule that contradicts the governing law as set forth in Supreme Court case law, or (2) if the state court confronts a set of facts that are materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent.  See Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 1519-20, 146 L. Ed. 2d 389 (2000).

A state court decision involves an unreasonable application of Supreme Court precedent "if the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case." Williams, 120 S. Ct. at 1520.  In addition, a state court decision involves an unreasonable application of Supreme Court precedent "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id.

Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000).  Moreover, the Act, as amended, presumes as correct all determinations of factual issues made by a state court and places the burden upon the petitioner of rebutting such a presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e).

Ineffective Assistance of Trial Counsel Claims

13.    To prevail on any of his claims of ineffective assistance of counsel, Petitioner bears the burden of establishing by a preponderance of the evidence that his trial and/or appellate counsel's performance was deficient and that he was actually prejudiced by the inadequate performance.  Strickland v. Washington, 466 U.S. 668

(1984).  The elements to be considered are as follows:

> First, the defendant must show that counsel's performance
> was deficient.  This requires showing that counsel made errors
> so serious that counsel was not functioning as the "counsel"
> guaranteed the defendant by the Sixth Amendment.  Second,
> the defendant must show that the deficient performance
> prejudiced the defense. This requires showing that counsel's
> errors were so serious as to deprive the defendant of a fair
> trial, a trial whose result is reliable.

Id., 466 U.S. at 687.  Thus, Petitioner must demonstrate that his counsel's performance

"fell below an objective standard of reasonableness,"  Strickland, 466 U.S. at 688, and

that "there is a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different."  Id. at 694.  "Establishing these two

elements is not easy: 'the cases in which habeas petitioners can properly prevail on the

ground of ineffective assistance of counsel are few and far between.'"  Van Poyck v.

Florida Dep't of Corrections, 290 F.3d 1318, 1322 (11th Cir. 2002) (quoting Waters v.

Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995)).

14.    An ineffective assistance of counsel claim is examined under the "totality of

the circumstances."  House v. Balkcom, 725 F.2d 608, 615 (11th Cir. 1984).  An

attorney's performance is presumed to have been reasonable and must not be examined

with the aid of judicial hindsight.  Messer v. Kemp, 760 F.2d 1080, 1088 (11th Cir. 1985).

A federal court must apply a "heavy measure of deference to counsel's judgments."

Singleton v. Thigpen, 847 F.2d 668, 670 (11th Cir. 1988) (quoting Strickland, 446 U.S. at

691).

> The test has nothing to do with what the best lawyers would
> have done. Nor is the test even what most good lawyers
> would have done. We ask only whether some reasonable
> lawyer at the trial could have acted, in the circumstances, as
> defense counsel acted at trial. . . . We are not interested in
> grading lawyers' performances; we are interested in whether
> the adversarial process at trial, in fact, worked adequately.

Grayson v. Thompson, 257 F.3d 1194, 1216 (11th Cir. 2001) (quoting White v. Singletary,

972 F.2d 1218, 1220-21 (11th Cir. 1992)).

15.     With respect to habeas claim 1, Petitioner claims that his trial counsel was

ineffective for failing to request discovery, failing to perform an investigation, allowing

the prosecution to introduce evidence of prior DUIs in an improper manner, failing to

make the prosecution show that Petitioner was represented by counsel in prior DUI

convictions, and failing to put on an alibi defense. First, as to Petitioner's claim that his

trial counsel was ineffective for failing to request discovery, Petitioner has failed to show

that he was prejudiced by this alleged failure. The record reflects that the trial judge

issued a discovery order to the prosecution on August 8, 2003. (Doc. 20, Ex. A at 21-24).

This order provided that the prosecution was to produce or make available to Petitioner's

trial counsel at arraignment all information and evidence both favorable and non-

favorable to Petitioner. Further, this order required the prosecution to disclose any

subsequently discovered evidence or information. (Id.).

16.     Petitioner has made no allegation of any particular evidence or information

which would have been discovered that had not already been produced pursuant to the

trial court's discovery order. Therefore, Petitioner has failed to establish that he was in

any way prejudiced by his trial counsel's failure to file a motion for discovery.

Moreover, Petitioner cannot establish that there is a "reasonable probability" that the

outcome of the trial would have been different had his attorney filed a discovery motion.

Strickland, 466 U.S. at 694.

17.    Second, Petitioner alleges very generally that his trial counsel was

ineffective for failing to conduct an appropriate pre-trial investigation.  Initially,

Petitioner states that "[h]e also did no investigation."  (Doc. 7 at 7).  Since the filing of his

Petition, in Petitioner's Opposition in Response to Answer filed on August 16, 2006,

(Doc. 24), he alleges that had his trial counsel performed an investigation, he would have

discovered witnesses which could have testified regarding his alleged medical condition

involving seizures.  However, the Court does not consider this necessarily favorable

information.  Further, Petitioner and his witnesses at the hearing on his motion for a new

trial testified that they had notified Petitioner's counsel of Petitioner's health condition

prior to the trial, and, assuming that testimony as accurate, Petitioner's trial counsel could

have determined not to use the information as part of his trial strategy.  (Doc. 20, Ex. A,

Vol. 4 at 551-566).  Given the evidence of Petitioner's intoxication and the presence of

cocaine in Petitioner's system at the time of the accident, it cannot be said that a

determination not to use evidence of such a medical condition constitutes ineffective

assistance of counsel.  As noted by the Alabama Court of Criminal Appeals, "[w]hether to

present testimony relating to the fact that Jackson suffered from seizures would not have

negated the obvious suggestion that it could be equally reckless to drive an automobile

when one suffers from such seizures." The court further determined that it was a "strategic decision" made by Petitioner's trial counsel which "should not be second-guessed." (Doc. 19, Ex. E).

18.    It is this Court's determination that Petitioner has failed to identify any favorable evidence which his trial counsel could have discovered had he conducted further investigation. "[T]here is no absolute duty to investigate particular facts or a certain line of defense, although a complete failure to investigate may constitute deficient performance of counsel in certain circumstances." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001). Claims of failure to investigate must show with specificity what information would have been obtained with investigation, and whether, assuming the evidence is admissible, its admission would have produced a different result. Nelson v. Hargett, 989 F.2d 847, 850 (5th Cir. 1993). See also Thomas v. State, 766 So. 2d 860, 892 and Patrick v. State, 680 So. 2d 959, 962 (Ala. Crim. App. 1996) (trial counsel is not required to investigate every "will-o'-the-wisp or rabbit trial (sic) matters of mitigation or defense"). Petitioner has simply failed to establish a "reasonable probability" that the outcome of the trial would have been different had his attorney conducted any further investigation.

19.    Next, Petitioner contends that his trial counsel was ineffective for failing to appropriately challenge the manner that his prior DUI convictions were admitted at trial. Specifically, in his habeas petition, Petitioner states as follows: "[h]e allowed the prosecution to introduce evidence of my prior DUI convictions in an improper manner;

27

this too was prejudiced; [h]e further failed to make the state show that I was represented by counsel on my prior DUI convictions as is required by law." (Doc. 7 at 7).  Although Petitioner does not offer any additional argument or explanation to the Court regarding the "improper manner" in which his prior DUI convictions were allegedly introduced, a review of Petitioner's Rule 32 Petition in state court reveals that Petitioner believes that there is a requirement that DUI convictions must be shown by either a "copy of the judgment entry in the court records" or on a "certified copy of the judgment entry in the court records." (Doc. 20, Ex. J at 38).

20.    Petitioner also asserts that his trial counsel was ineffective for failing to show that he was represented by counsel on the prior DUI convictions.  Petitioner, however, fails to enlighten the Court as to what part of the law he has discovered which provides these requirements for the introduction of prior DUI convictions into evidence, other than to state (in his Rule 32 petition) that "the Alabama Supreme Court and the Criminal Court of Appeals both agree that the failure to show a defendant was represented by counsel is a fundamental prerequisite to the showing of the authenticity of a prior DUI conviction." (Doc. 20, Ex. J at 40).  On the contrary, the Alabama Court of Criminal Appeals has stated the following:

> In a prosecution for vehicular homicide, evidence of the defendant's prior history regarding drugs, alcohol, and driving may be admissible in order to prove that the defendant had been drinking or using drugs prior to the accident, the defendant's intent, or the defendant's reckless indifference to the probable consequences of his acts, <u>regardless of whether the prior arrests resulted in convictions.</u>

The appellant argues that the evidence concerning the 1984 incident was inadmissible because that conviction occurred when he was 17 years old and was not represented by legal counsel and because the State failed to show that the appellant was not treated as a youthful offender.

We recognize and adhere to the principles that Alabama's Youthful Offender Act does apply to a defendant charged with driving while under the influence, and <u>that in order to use a prior conviction for driving under the influence for penalty enhancement purposes, the State must establish that the defendant was represented by counsel or that the defendant had validly waived counsel at the time of the prior conviction[.]  However, neither of those principles are applicable here.</u>

In this case, the evidence of the appellant's prior history regarding driving while under the influence of alcohol and drugs and the evidence of his prior convictions were admitted, not to impeach the appellant or to enhance his sentence, but as evidence of his criminally culpable mental state on the occasion charged in the indictment.  "If an item of evidence is admissible for one purpose, it will be received in evidence despite the fact that there exists some other purpose for which it is not admissible. This is known as the doctrine of multiple admissibility."

<u>Crauswell v. State</u>, 638 So. 2d 11, 14-15 (Ala. Crim. App. 1993) (citations omitted) (emphasis added).

21.     The Court further notes that Petitioner's trial counsel objected to the admission of these prior DUI convictions, arguing their relevancy to the proceedings. (Doc. 20, Ex. A at 415-16, 419).   Petitioner has failed to show that his trial counsel's performance "fell below an objective standard of reasonableness," and that but for his trial counsel's poor performance, the result of the trial would have been different.

<u>Strickland</u>, 466 U.S. at 688, 694.

22.    Finally, Petitioner claims that his trial counsel was ineffective for his failure to put on an alibi defense during trial.  The Court presumes that Petitioner's meaning of alibi in this case is that he suffered a seizure and became unconscious just moments before the accident.  Petitioner previously presented this argument to the Alabama Court of Criminal Appeals, and they noted the following:

> We note at the outset that Jackson was not convicted of intentional murder, but of reckless murder, pursuant to § 13A-6-2(a)(2), Ala. Code, 1975.  All that the jury needed to believe is that Jackson, under circumstances manifesting extreme indifference to human life, recklessly engaged in conduct which created a grave risk of death to a person other than himself, and causes the death of the other person. Whether to present testimony relating to the fact that Jackson suffered from seizures would not have negated the obvious suggestion that it could be equally reckless to drive an automobile when one suffers from such seizures.

Doc. 19, Ex. E at 4).  In light of the evidence of Petitioner's intoxication and the presence of cocaine in Petitioner's system at the time of the accident, it cannot be said that Petitioner's trial counsel was ineffective for choosing not to put forth evidence indicating that Petitioner suffered from seizures.  Further, since Petitioner was convicted of reckless murder, not intentional murder, an alibi of "unconsciousness" would not have made any difference.

23.    For the reasons stated above, this Court finds that each of Petitioner's claims of ineffective assistance of trial counsel fails.

<u>Ineffective Assistance of Appellate Counsel Claims</u>

24.     Petitioner's habeas claim 2 encompasses four different claims of the ineffective assistance of appellate counsel.  First, Petitioner claims that his appellate counsel was ineffective for failing to use the two prong test of <u>Strickland v. Washington</u> when raising ineffective assistance of trial counsel claims on direct appeal.  Petitioner next contends that his appellate counsel was ineffective for raising issues which were not preserved for appellate review.  Petitioner also claims that his appellate counsel was ineffective for failing to confer with Petitioner prior to filing the appeal, and for failing to notice that the State improperly introduced Petitioner's prior DUI convictions at trial. (Doc. 7 at 7).

25.     The standard of ineffective assistance of appellate counsel is the same as applied in <u>Strickland</u>, pursuant to <u>Smith v. Robbins</u>, 528 U.S. 259, 285-86 (2000). <u>See</u> <u>Smith v. Murray</u>, 477 U.S. 527, 535-536, 106 S. Ct. 2661, 91 L. Ed. 2d 434 (1986) (applying <u>Strickland</u> to claim of attorney error on appeal).  So, once again, Petitioner must satisfy the <u>Strickland v.Washington</u> standard, and show that his appellate counsel's performance "fell below an objective standard of reasonableness,"  <u>Strickland</u>, 466 U.S. at 688, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  <u>Id.</u> at 694.  When Petitioner presented his claim of ineffective assistance of appellate counsel to the state trial court, that court determined that the "issues that appellate counsel raised on appeal were the only ones that properly were preserved for appellate review, and were then decided by the Criminal Appeals Court adversely to Petitioner." (Doc. 20, Ex. J at 115).

Further, the trial court noted that Petitioner "provide[d] no factual or legal basis to show that but for appellate counsel's performance [he] would have prevailed on appeal." (Id.).

26.     Petitioner claims in his habeas petition that his appellate counsel was ineffective for failing to apply the Strickland v. Washington standard to appellate counsel's argument that Petitioner's trial counsel was ineffective.  In Petitioner's direct appeal brief, Petitioner's appellate counsel, James M. Byrd, argued that Petitioner's trial counsel was ineffective for failing to contact any of the witnesses which Petitioner alleged could testify regarding the fact that Petitioner had suffered seizures in the past. Mr. Byrd also argued that trial counsel failed to present any evidence that Petitioner may have had a seizure and lost consciousness before he drove on the wrong side of the road. Mr. Byrd further asserted that Petitioner's trial counsel's performance was "deficient" and that Petitioner was "prejudiced" by his counsel's poor performance.  (Doc. 19, Ex. B at 14).  Although Mr. Byrd did not specifically cite the case of Strickland v. Washington, based upon his arguments, it appears that he applied the standard.  (Id.).  Moreover, Petitioner has not demonstrated that he would have prevailed on direct appeal if his appellate counsel had merely cited to Strickland, and therefore, this claim fails.

27.     Petitioner next argues that his appellate counsel was ineffective for presenting an argument that was not preserved for appellate review.  The State has responded that it "cannot be considered outside the wide breadth of reasonable appellate representation to present a potentially meritorious argument that an appellate court may conclude was not preserved for review."  (Doc. 17 at 37).  The Court agrees.  Moreover,

Petitioner cannot show that he was prejudiced in any way by his appellate counsel asserting this argument.

28.     Next, Petitioner contends that his appellate counsel was ineffective for failing to confer with him during the preparation of the appellate brief.  However, this allegation alone does not demonstrate ineffective assistance of counsel.  In McBride v. Sharp, 25 F.3d 962, 973 (11th Cir. 1994), McBride argued that his appellate counsel was ineffective, among other grounds, "for failing to consult with McBride concerning the appeal."  Id.  McBride's appellate counsel contended that "he did not discuss the appeal with McBride personally because he was confined to the trial record and, in his professional opinion, further discussion would not have been helpful."  Id.  The Eleventh Circuit held that "McBride has not shown that any of appellate counsel's actions were deficient or prejudicial to his case."  Id.

29.     In the present action, Petitioner has not shown that his appellate counsel's failure to confer with him prior to the filing of the appellate brief was outside the wide scope of acceptable conduct.  Further, Petitioner has not shown that he was in any way prejudiced by his counsel's failure to consult with him prior to the filing of the brief.  Petitioner has certainly not demonstrated that, but for Mr. Byrd's failure to confer with him prior to the filing of the brief, he would have been successful on appeal.  Therefore, this claim must fail.

30.     Finally, Petitioner claims that his appellate counsel was ineffective for failing "to [n]otice that the State improperly introduced [his] prior DUI convictions."

Initially, the Court notes that as this issue was not raised at the trial court,[6] it is unlikely that it would have been successful on appeal.  It has been held that "[t]he statement of specific grounds of objection waives all grounds not specified, and the trial court will not be put in error on grounds not assigned at trial." Ex parte Frith, 526 So. 2d 880, 882 (Ala. 1987).  Moreover, even if the argument had been preserved for appeal and had been presented by Petitioner's appellate counsel, there is not a "reasonable probability ... he would have prevailed on his appeal."  Smith, 528 U.S. at 285.

31.    For the reasons explained above, each of Petitioner's claims of ineffective assistance of appellate counsel fails.

<u>Improper Introduction of Evidence</u>

32.    In habeas claim 3, Petitioner claims that the trial court allowed the improper introduction of his prior DUI convictions.  Petitioner contends that the DUI convictions were not introduced on any of the "legally required documents" as "established by law." (Doc. 7 at 8).   Initially, this Court begins its analysis of Petitioner's third claim with the principle that federal habeas relief for state prisoners attacking their conviction is limited in scope:

> The Supreme Court, a Justice thereof, a circuit judge, or a
> district court shall entertain an application for a writ of habeas
> corpus in behalf of a person in custody pursuant to the
> judgment of a State court only on the ground that he is in
> custody <u>in violation of the Constitution or laws or treaties of</u>
> <u>the United States.</u>

---

[6]Trial counsel only argued against admission of the convictions due to relevancy and remoteness.  (Doc. 20, Ex. A, Vol. 3 at 415-16, 419).

28 U.S.C. § 2254(a) (West 2003) (emphasis added).  "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of a constitutional dimension."  Smith v. Phillips, 455 U.S. 209, 221 (1982).  See also Cupp v. Naughten, 414 U.S. 141, 146 (1973) ("Before a federal court may overturn a conviction resulting from a state trial . . .  it must be established not merely that the [State's action] is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment.").

33.    Questions of state law rarely have federal constitutional significance because "[a] state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved."  Carrizales v. Wainwright, 699 F.2d 1053, 1055 (11th Cir. 1983).  Such questions are reviewed in federal habeas proceedings only to determine whether the alleged errors rendered "the entire trial fundamentally unfair."  Id. at 1055.

34.    In reviewing an evidentiary determination of a state trial court, as in this case, the federal court will "not sit as a 'super' state supreme court."  Shaw v. Boney, 695 F.2d 528, 530 (11th Cir. 1983) (citations omitted).   In Shaw, the Eleventh Circuit explained:

> Unlike a state appellate court, we are not free to grant the
> petitioner relief simply because we believe the trial judge has
> erred. The scope of our review is severely restricted.  Indeed,
> the general rule is that a federal court will not review a trial
> court's actions with respect to the admission of evidence.
> [Citations omitted].  A state evidentiary violation in and of

itself does not support habeas corpus relief.  [Citations omitted].  Before such relief may be granted, the violation must rise to the level of a denial of "fundamental fairness." [Citations omitted].

In the context of state evidentiary rulings, the established standard of fundamental fairness is that habeas relief will be granted only if the state trial error was "material in the sense of a crucial, critical, highly significant factor."  [Citations omitted].  Moreover, application of this standard has been notably one-sided, consistent with the reluctance of federal courts to second-guess state evidentiary rulings.  This court has established a well-documented resistance to granting relief when a habeas petition alleges a federal claim based merely on a state evidentiary ruling.

Id.

35.    Petitioner challenges the admission of his prior DUI convictions on the grounds that they were not introduced on any of the "legally required documents" as "established by law."  (Doc. 7 at 8).  In this action, Petitioner was convicted of reckless murder, assault in the first degree, and assault in the second degree.  (Doc. 20, Ex. A, Vol. 3 at 523).  Regarding the reckless murder charge, the Alabama Court of Criminal Appeals noted that "[a]ll that the jury needed to believe is that Jackson, under circumstances manifesting extreme indifference to human life, recklessly engaged in conduct which created a grave risk of death to a person other than himself, and causes the death of the other person."  (Doc. 19, Ex. E at 4).

36.    Evidence was presented at trial which showed that Petitioner, while driving his vehicle, crossed over several lanes of traffic, and struck the vehicle in which the victims were driving/riding head-on, causing injuries to two individuals and the death of

another.  (Doc. 20, Ex. A, Vol. 1 at 103-104, 126, 128-131; Vol. 2 at 132; Vol. 3 at 350, 353).  Further, evidence was presented that indicated that Petitioner was intoxicated at the time of the accident, including detailed testimony from the physician who treated Petitioner following the accident.  (Doc. 20, Ex. A, Vol. 2 at 181-183, 186-187, 189-190, 195-197, 263-264, 268-269, 281-282).  Moreover, a urine test showed that Petitioner had cocaine in his system at the time of the accident.  (Id. at 307).  In sum, there was abundant evidence that Petitioner was impaired from drugs and /or alcohol at the time of the accident, and that he recklessly drove his vehicle directly into the victims' vehicle, and the admission of evidence of two prior DUI convictions did not render Petitioner's "entire trial fundamentally unfair."   Carrizales v. Wainwright, 699 F.2d at 1055.

37.     Additionally, the Court notes that Petitioner failed to allege the violation of a federal constitutional right concerning this claim, and instead, only raised it as a state law issue.  As previously noted, petitioners must have "fairly presen[ted]" their habeas claims to the state courts and have given them an opportunity to pass upon or correct constitutional violations.  This requires the habeas petitioners to have alerted the state courts to the fact that they are claiming constitutional violations.  See Duncan v. Henry, 513 U.S. 365-366 (1995); Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 512, 30 L. Ed. 2d 438 (1971); and Isaacs v. Head, 300 F.3d 1232, 1254 (11th Cir. 2002) (holding that a one-sentence claim that only cites state law and does not cite any federal cases or use any language to alert the state court that petitioner was raising a federal claim in the state court does not "fairly present" a federal claim to the state court).  Therefore, in addition to

Petitioner's failure to show that his "entire trial" was rendered "fundamentally unfair," Petitioner's failure to alert the state court of his claim of a constitutional violation also causes Petitioner's habeas claim 3 to fail.

<u>Fatal Material Variance of the Indictment</u>

38.    With respect to habeas claim 4, Petitioner claims that there was a fatal material variance of the indictment because the indictment set out that Petitioner was driving under the influence of either drugs or alcohol but the State failed to prove either. Petitioner presented this same argument to the Alabama Court of Criminal Appeals in his Rule 32 proceedings, and, while the Court appeared to deny this claim on procedural grounds,[7] it noted that the State "proved that [Petitioner] was under the influence of both drugs and alcohol and was driving erratically, crossing over several lanes of traffic to collide with the victims' car."  (Doc. 19, Ex. N at 2).

39.    The Court begins its analysis by reiterating the principle that federal habeas relief for state prisoners attacking their conviction is limited in scope, and that federal courts will intervene "only to correct wrongs of a constitutional dimension."  <u>Smith v. Phillips</u>, 455 U.S. at 221.  Questions of state law rarely have federal constitutional significance and are reviewed in federal habeas proceedings only to determine whether the alleged errors rendered "the entire trial fundamentally unfair." <u>Carrizales v.</u>

---

[7]The appellate court affirmed the trial court's denial of Petitioner's claim of a fatal material variance from the indictment because of the trial court's determination that this claim, although couched in jurisdictional language, addressed the sufficiency of the evidence and was therefore, precluded from appellate review because it could have been, but was not addressed at trial and on appeal.  (Doc. 19, Ex. N).

Wainwright, 699 F.2d 1053, 1055 (11th Cir. 1983).

40.     In this action, although Petitioner terms his claim as a "fatal material variance of the indictment," Petitioner is essentially asserting a sufficiency of the evidence claim.  Petitioner claims that the State failed to prove that he was intoxicated or on drugs at the time of the fatal accident, and the Court presumes, this rendered his trial fundamentally unfair.  Having reviewed the record in this matter, the Court agrees with the Alabama Court of Criminal Appeals that the State did in fact prove that Petitioner "was under the influence of both drugs and alcohol and was driving erratically, crossing over several lanes of traffic to collide with the victims' car."  The record reflects that evidence was presented at trial indicating that Petitioner's vehicle smelled strongly of alcohol following the accident.  (Doc. 20, Ex. A, Vol. 2 at 181-183, 186-187, 189-190, 195-197, 263, 268-269, 281-282).  Additionally, witnesses testified that Petitioner was combative after the accident, and, significantly, several witnesses, including the investigating officer, a paramedic at the scene and the treating physician at the hospital testified that Petitioner smelled of alcohol.  (Id.).  Further, a urine test showed that Petitioner tested positive for cocaine.  (Id. at 307).

41.     In this habeas claim, Petitioner is merely asserting that the state trial court erred in applying Alabama evidence law, a claim which rarely provides a basis for federal habeas relief.  Shaw, 695 F.2d at 530; Carrizales, 699 F.2d at 1055.  The Court concludes that Petitioner was not deprived of fundamental fairness in his action before the trial court.  Thus, Petitioner's Claim 4 fails to state a cognizable federal habeas claim and is

due to be denied.

### III. CONCLUSION

Based on the foregoing, the undersigned Magistrate Judge is of the opinion that Petitioner's request for habeas corpus relief should be denied.

The attached sheet contains important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 20th day of June, 2007.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1.     **Objection**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

        A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.     **Transcript (applicable where proceedings tape recorded)**.  Pursuant to 28 U.S.C. § 1915 and Fed. R. Civ. P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.